The next matter on the docket this morning is Case No. 122761, Papal v. Manzo, Agenda No. 7. Counsel, you may proceed. Good morning, Your Honors. May it please the Court and opposing counsel. My name is Aditha Rosario-Moore, and I'm here representing the defendant appellant, George Manzo, on behalf of the Office of the State Appellate Defender. There's one issue in this case, and that's whether the search warrant application established probable cause to search Manzo's home, where it was based on criminal activity conducted in public by another person, Ruben Casillas. This case concerns then not the suspect's home, but a third party's home, and the home is the most protected space under the Fourth Amendment. That's bedrock Fourth Amendment law. And it's probable cause that ensures the balance between Fourth Amendment interests. So law enforcement can search a home if there's a fair probability that evidence of a crime will be there. And that means that the circumstances are sufficient for a person of reasonable caution to believe not only that a crime has been committed, but that evidence of that crime will be at the home. Now, the state argues that it makes no difference whether Casillas lived in Manzo's home. But, of course, it does. It's not a requirement, but it's a factor. And most of the cases cited in the briefing between Manzo and the state concern suspect's homes, where there's an established connection between the suspect and the place to be searched. So without that fact, the circumstances themselves have to establish a fair probability. And here, a practical common sense assessment of the totality of the circumstances don't establish that. Now, it's uncontested that there's no direct evidence of criminal activity in the home. And Manzo's not the target of the warrant. So the only way to establish probable cause, then, is for reasonable inferences to be made based on the information in the affidavit. And here, there's a noticeable absence of fact connecting Casillas' criminal activity to Manzo's home. And this contrasts with the specificity of what's in the affidavit about Casillas' drug dealing. So we know how the deals occur. We know that affiant officer Harrison calls a number, he texts it, he reaches Casillas and asks for a small amount of drugs. Casillas directs him to a store, they meet inside, the drugs are on the shelf. Casillas points to it, Harrison retrieves it, gives him the money, and they leave. The drugs are tested and confirmed to be cocaine. So we know that there's drug dealing going on. And the deal, and as to the first two, where Casillas comes from or goes. We know only once, that he comes from Manzo's home before the third deal. Otherwise, the warrant is silent as to whether he comes from or goes. And so when coupled with the other information in the warrant, it's clear that this warrant is bare bones as to Manzo's home. Because all we know otherwise is as to the first guy that Casillas is seen in a car, registered to a person named Leticia Hernandez at 701 West Marion. That's Manzo's address. This means nothing more than that they know each other. To infer more is unreasonable. The state argues it's reasonable to infer that they have more than a casual relationship because he's in her car driving. But that's conjecture. We don't know if he's alone. There's no mention of Hernandez being in the car. So there's a lack of facts and observations on which to base that inference. And that's demonstrated in Harmon. That's the case that the state relies on. The police had probable cause to search a third party's home where that third party provided a murder suspect with a ride to buy a disguise and then get out of town. Here we have nowhere near that amount of detail. The car is not even observed at the house with or without Casillas in it. So to infer that there's a level of trust then that rises to Casillas keeping drugs in Manzo's home is at best guilt by association and that's unreasonable. So the third buy we know that Casillas was seen leaving Manzo's home. Now much is made of the uninterrupted surveillance which means only that the police watched him from when he left until he got to the store. There's nothing to indicate how long the surveillance had been going on, what time or how long it had been between Casillas getting the request for drugs and getting to the store or whether he stopped anywhere else. So it's unreasonable to infer that Casillas who's dealing the small amount of drugs, an eighth of an ounce, would get those drugs from the home where it's easily concealed on his person. Otherwise there are two conclusory statements. One is that the stores are in the vicinity of the home. That's imparting meaning to the proximity of these stores without a basis. Counsel, don't we look at all of the circumstances set forth in the affidavit in totality to see whether there's a fair probability that there's contraband or evidence of a crime? We do, Your Honor, and the point with the conclusory paragraphs is that those conclusions cannot be the basis for the inference. The inference has to be based on facts and observations. So as to the proximity, imparting meaning on the proximity of these stores without knowing why Casillas is at the house is improper. Because we know that he doesn't live there. He's identified by his Illinois driver's license. It doesn't list 701 West Marion, so we know he goes somewhere else. We know that there's an established connection there. He goes there more than once. Here to infer that he goes there more than once because he's seen there once and he was in a car once 19 days earlier that's registered there is unreasonable, and that would be considering the totality of the circumstances. Otherwise there is another conclusory statement, which I refer to as the associates paragraph in the briefing. That states that law enforcement records show Casillas is an associate of Hernandez who lives at the home. Well, that's either a reiteration of the same, that he was seen in her car, or it implies some baseless connection. There's unknown law enforcement records without any details connecting Hernandez to an illicit activity or Casillas' drug dealing. And so when considered with all the information in the warrant, the magistrate could reasonably infer that Casillas is a drug dealer, and that he knows that Casillas is a drug dealer. He knows Hernandez or someone who lives at 701 West Marion. Everything else is hunches and speculation based on conclusions, and that's why the warrant application is bare bones as to Monso's home. We analogize to Len Yun and argue that that supports a finding that the warrant application didn't establish a substantial basis for probable cause here. Now Justice O'Brien in her dissent agreed, and found that there was even more information connecting Casillas to Monso's home. And that defendant to the home in Len Yun. In that case, the police observed defendant leave an apartment building three times, and then drive to meet an individual on the street and appear to exchange money. They confirmed that one of those times was a cocaine deal. They detained a man named Cox. He said he bought the drugs from the defendant and gave them the number that he called. And so based on that information, police obtained a warrant to search the defendant in the car that he was using. They searched it and they didn't recover a contraband. They found a card with the number on it, a card with the word dope, $350, and there was a positive dog sniff. And his license listed the place where he had left, but he denied living there. So based on that information, police obtained a warrant to search his home. And the appellate court found there wasn't enough to establish a substantial basis. Because to uphold that warrant under those circumstances would mean that mere commission of a crime on the street would create a fair probability that evidence would be found in the suspect's home. Nothing else tied the defendant's drug dealing to his home in that case. Here, Casillas doesn't even live there. He's seen in a car registered to a home before a deal in public, and then he's seen at that home 19 days later before another deal. We know nothing about the owner or the house, and to find a substantial basis based on that information would be a conclusion based on hunches. So the only thing you can infer is what Justice O'Brien did, which is that Casillas was an acquaintance of the owners of the home. And I think it's best, these circumstances are best illustrated, I think, in a real life scenario. So I have a teenage niece and nephew. They're often in my car. They often have friends with them. It could be that one day I'm driving my niece from an activity home, and she has a friend with her, and that friend says, hey, can we stop at this grocery store so I can get a snack? We all live near one another. So I do that. The friend goes into the store and conducts a drug deal, comes back into my car, and I take her home. A week later, she conducts another drug deal in the neighborhood at another store. And a week after that, my niece invites her friend to my house for dinner, and after dinner, that friend leaves and conducts another drug deal in the neighborhood. That would not be probable cause to search my home, but under the facts of this case, it could be. And that's more, the Fourth Amendment requires more than that. And so under those circumstances, the good faith exception also shouldn't apply. Because as the Lenun Court found, when you have a warrant that's bare bones as to a place to be searched, there cannot be reasonable reliance. Those inquiries are intertwined. You can't have objective officer reasonable reliance on a bare bones warrant. The court considers the objective reasonableness not only of the officers executing the warrant, but the affiant officer. And so instead, the exclusionary rule should apply. There are two aspects of officer conduct to deter. The first is to deter officer reliance on bare bones circumstances that I just described. And the second is to deter affiants from bootstrapping probable cause in the way that happened here. This is what the court in Rojas warned against, where you have a warrant that has information, it has probable cause to search another person or another place. And then that's then bootstrapped by association to another person or another place. These warrants can be misleading. Whether purposeful or inadvertent, they can be misleading and they can create a sense that evidence could be found somewhere, but they certainly don't create probable cause. Here, Harrison also executed the warrant. He attested to the lack of known details, the conclusory associates paragraph. He was aware of the ambiguity and then relied on 13 other officers in executing that warrant to search Monsa's home. More investigation should have been conducted. There was no apparent exigency. The warrant was requested three days after the third by. It was approved that day and then the officers waited yet another day before executing it. More of a sufficient investigation could have been conducted. This is the other part of the Fourth Amendment that needs to be balanced. So if there are no questions, Monsa asks that this court find that there was no probable cause in the warrant application and that the good faith exception should not apply. Make sure the microphone is adjusted for you. May it please the court? My name is Leah Bendick from the Illinois Attorney General's Office on behalf of the people of the state of Illinois. This court should affirm the judgment of the appellate court that confirmed the validity of the search warrant of 701 West Marion in this case, either because the warrant was in fact valid or alternatively because the good faith exception to the exclusionary exception was not valid. I will start with the validity of the warrant, which is actually a two-part question in this case because the parties dispute the applicable standard of review. I actually think it's noteworthy that my opposing counsel here today did not mention that whatsoever. Her briefs seem to advocate for a de novo standard of review, but this is mistaken. The appellate court majority correctly applied a deferential standard of review and defendants' briefs in advocating for a de novo review cite only two Illinois appellate court cases and cases from this court that instead were citing to the general standard, the bifurcated standard applicable to review of suppression motions, which include an ultimate review of the denial or allowance of such a suppression motion de novo. But those very same cases that defendants cite, people v. McCarty, people v. Sutherland, when talking about a specific challenge to a suppression issue where the issue is whether there's probable cause, to support a cert warrant, this court correctly identified the deferential standard of review. And for good reason, and that is because the U.S. Supreme Court has repeatedly and clearly stated that that is the proper standard. This is an area of the law that this court follows lockstep to federal precedent, and the defendant has not identified a basis to break from that. Not only... I'm going to challenge you a little bit there. Standard review is a constitutional lockstep idea? Oh, well, just the idea that in the Fourth Amendment context, this court follows lockstep to federal precedent of interpreting the Fourth Amendment. And if this is an issue, you know, the standard review where lockstep is appropriate, certainly this court should follow that federal precedent because the U.S. Supreme Court has identified an important policy reason behind this deferential standard. And that is that the Fourth Amendment has an express preference for warrants. It says that, generally speaking, searches by police are reasonable if done pursuant to a warrant. And a deferential standard encourages the police to go out and get those warrants first. That counterbalances the concerns the defendant identifies about, yes, the home is a very sacred space for the Fourth Amendment purposes, but the U.S. Supreme Court is certainly aware of that and has repeatedly said that the deferential standard should apply. This court has already said that in McCarty and Sutherland to agree, and so this court should continue to reaffirm that deferential standard. And what that deferential standard is, is asking whether the magistrate had a substantial basis, that's the layer of deference, to find a fair probability that the evidence of the crime should be found there. My opponent did not mention that deference here today, and that's an important component of how this court should review what happened below. So in the context of the facts of this case, the central question is whether there's a sufficient nexus between the crimes identified, the items to be seized, and the location to be searched. Here that is the three drug buys my opposing counsel identified by Ruben Casillas. The items to be searched are items one would expect to be connected to such drug dealing, and the location here that's challenged is the residence at 701 West Marion. Now Illinois cases have also acknowledged a related principle that shows how important the U.S. Supreme Court has emphasized this preference for searches conducted to warrants. Not only does that support the application of the deferential standard of review, but it also supports the principle that again Illinois cases have repeated, that in close cases, marginal cases, reviewing courts should construe the warrant application to uphold the warrant. That is the importance of the warrant, and encouraging police to get the warrants before conducting searches. Now that's about as far as Illinois cases have gone in explaining how this nexus analysis should go, but it's quite noteworthy that there are numerous instances of cases from other jurisdictions that with remarkable uniformity, identify the same four factors as being useful to analyze whether a sufficient nexus exists. And I have provided citations to several of these cases at page nine of the appellee's brief, cases from state supreme courts and federal courts of appeals. This court should adopt these four factors as being useful for this analysis, and they include number one, the type of crime involved, number two, the nature of the items to be seized, number three, the extent that the suspect had an opportunity to conceal evidence of the crimes, and finally, common sense inferences about where such evidence would be hidden. And applying that to these facts is useful. So turning to that first fact, the type of the crime, these other cases in the context of search warrants connected to drug dealing have sorted the cases into two categories. The first category are the cases in which the facts known from the warrant affidavit indicate that the drug deals might be nothing more than a drug user on an isolated incident deciding to sell drugs on his or her person that otherwise might be there for personal use. And the second category is where there is enough evidence in the warrant affidavit to indicate that the drug dealer is an established drug dealer who has on repeated occasions sold drugs. And that is important because a repeated drug dealer would have more items associated with that drug dealing. He or she would need access to a larger drug supply, would need other items connected to drug dealing, such as scales, packaging, like plastic baggies, large amounts of cash. And if you start to imagine all of those items side by side, the array of these tools that go with drug dealing, those cannot be carried on one's person from place to place. And that's an important distinction because then if you think you're dealing with an established drug dealer, that person would need a place to store these items. So which category do we have here? Well, we do have enough facts from the warrant affidavit to reasonably infer that Ruben Casillas was an established, repeated drug dealer. After all, he sold cocaine on many occasions to the undercover officer here in the course of 20 days. And in all three instances, when Officer Harrison contacted him to initiate these drug deals, he was able to respond that same day and provide the requested drugs. So that does raise a reasonable inference that he would need a place to store these items, which leads to the second and fourth factors. What are the nature of these items? At least some of them are inherently illicit. Certainly a larger supply of cocaine, that's inherently illicit. And the reasonable inference that follows from that is you need a hidden secret or at least secure place to store your larger supply of cocaine. And while the other items I mentioned aren't necessarily inherently illicit, things like scales and cash and plastic bags, they certainly, when possessed in combination with a large supply of drugs, are indicative of drug dealing. And so because these are inherently illicit, the common sense inference that follows, as these cases cited in the brief have shown, you need a private place to store these items that's dependable. And while oftentimes, as my opposing counsel has cited, it is often the drug dealer's residence, certainly it's true that not everybody has a stable residence. Not everybody has roommates they can trust to store items like this nearby. In other words, what I'm trying to say is while if it is your residence, that would be another factor to support searching it, it is not a negative fact if we're talking about searching a third party's residence. That is, just because we didn't know that 701 West Marion was Casillas' residence shouldn't detract from the probable cause in light of the other facts that connected Casillas to this particular location. And so that is bringing us to the core here. Is there enough connection between Casillas and 701 West Marion in particular to make a substantial basis for the magistrate to conclude a fair probability that the evidence would be located there? And there are three facts here. The first is from the first drug sale. The fact that Casillas drove to and from the first sale in the Ford Explorer that was registered in another person's name at 701 West Marion. Now defendant is sort of dismissive of this and just says all that shows is that Casillas knows the residence, but I would disagree. There's at least a reasonable inference to be made that where someone is driving someone else's car that there is some level of a relationship there. I would not hand my car keys to someone I just met and allow them to drive away. At least a reasonable inference that there is an established relationship. That's one piece in the totality of the circumstances. The second fact is drawn from both the second and the third sales. The fact that these public sales took place in the vicinity, that is the term from the affidavit of 701 West Marion. Now my opponent here tries to say it's just speculation, that it's a conclusory statement to say they were in the vicinity, but that is not true. This affidavit provided the specific addresses of where these sales took place. This court can look at pages 11 and 12 of the Applebee's Appendix and see the Google Maps that show the distances between 701 West Marion and 704 West Jefferson and 712 West Jefferson. This is a source of indisputable accuracy. It's a verifiable fact, appropriately subject to judicial notice both by this court and by the magistrate who was looking at this information originally. How far is it? It's about a quarter of a mile. According to Google Maps, it takes between three and five minutes to walk there. But certainly a quarter of a mile can be reasonably judged to be walkable and in proximity. What does that mean? That means there's a reasonable inference that Casillas knew the neighborhood. That Casillas was familiar with the area and that 701 West Marion is at least a candidate for being a logical, reasonable, convenient place for him to store these items. Counsel, I don't remember. Was that in the record? Those maps? Google Maps? No, they were not. But because the specific addresses were provided, it would have been appropriate for the magistrate to look at a map just like it's appropriate for this court to look at the maps that were included in the appendix. Thank you. Does the record have any evidence on the statement that law enforcement records show that Casillas was an associate of Leticia Hernandez who resided at 701 West Marion? I could not find further explanation for that except that I believe Officer Harrison, when he testified at the trial, said he was unaware that they in fact were related. Hernandez was Casillas' cousin, it turns out. And he said he looked at law enforcement records. It's not otherwise explained. And as I'm standing here explaining the three facts, I actually don't rely on that sentence as one of the three facts. I don't think it provides any more weight than the fact that Casillas was seen in Hernandez' car, for example. So I'm not asking this court to take that as any additional weight in support of probable cause because it's unclear. And so in fact, to get back to that list then, so there's first, being in the Ford Explorer, the second and third sales were in the proximity, and the third and final fact, again, not citing the associate's sentence, but the third fact and most important fact was that for the third sale, when Officer Harrison contacted Casillas to set up the third buy, at the same time the police were conducting surveillance of 701 West Marion, and they observed Casillas exit 701 West Marion and walk through uninterrupted surveillance, which indicates they never lost sight of him, that he walked to the third sale and conducted the third sale. Certainly the fact that someone exits a residence and goes to a drug sale has been cited on numerous occasions as supporting an inference, a reasonable inference that these items could be there. My opposing counsel is right that in most cases it is the drug dealer's residence, but there is no requirement that that be the case. Are there any cases that you could cite too, where the drug dealer leaving a home, therefore gives probable cause to search the home of a third person? Yes. State versus Rogan. I've cited at page 14 of the Applebee's brief, it's a North Dakota Supreme Court case, where there was found to be probable cause to search a third party's house. There the dealer had entered the house after one sale, and the second fact that was cited was that she, I believe it was she, entered and exited the house after she was contacted later for pricing about a second sale. So that's pretty similar to what we have here. We have that kind of coming and going on one occasion and a little bit more, which is what we would say is also true here. It's also kind of a red herring that defendant keeps saying that Casillas was the target of the search, not defendant. That is not the standard. The standard is only whether there is sufficient connection between the crimes, the items to be seized, and the location to be searched. That has nothing to do with mentioning a person. It's just where are these items going to be. And the fact that it's reasonable inferences are actually verified by the record. We can infer Casillas had a relationship with the residents. That turned out to be the case. He's Hernandez's cousin, and he was staying there on occasion. And the fact that he might look to a different person's residence to store these items is a reasonable inference because that turned out to be the case. He said, well, I didn't feel safe in my own home. I was having trouble with my girlfriend. There was gang activity in my neighborhood, so that's why I was staying with my cousin sometimes. So this case is an example of why someone might not use their own residence to store these items that are connected with drug dealing. How do you respond to opposing counsel's hypothetical about transporting the friend of the child to and from and they stop and do drug deals and you don't know it. And then they come to your house. How do you distinguish that case? I would distinguish it because it seems from the affidavit that here the drug dealer was driving the car. I think that shows an extra level of trust than her hypothetical where it would be the friend who's simply riding in the car. But otherwise I would say that this is a low standard and under those circumstances that might be probable cause to search that house. I think that we should remember that this is a very preliminary step in the process. We're not talking about convicting of a crime. We're not talking about sufficient to charge a crime. And we're not even talking about the end point of a police investigation. A search warrant is a step in the process. To the extent my opponent is trying to fault the police for not taking additional steps before this, this is one of the steps that they were taking in the investigation and appropriately so. It's a low standard because it is a preliminary step in the process. And we should remember again that U.S. Supreme Court is applying this deferential standard of review. We just need a substantial basis to find a fair probability. Not that this is the most likely place where these items will be found, but that there's a fair probability that it will be found here. I see only a few minutes left, so I would like to turn to the good faith exception if that's alright. Where it's a closer case perhaps, the validity of the warrant, the application of the good faith exception is not a close case for two reasons. We know that United States versus Leon is the U.S. Supreme Court case that created the good faith exception and it's codified in the Code of Criminal Procedure. And Leon itself said the good faith exception applied in that case because the appellate court justices below in that case had divided, had split over whether the affidavit had probable cause. That's what we have here. Not only do we have the magistrate, Judge White, but we have the judge in the circuit court who presided over the suppression hearing, Judge Vermilla, and we have two out of three appellate court justices in the panel below that found this document, this warrant affidavit, had sufficient evidence to be probable cause. Because we trust magistrates to make these judgments of issuing warrants, they're in a better position than the police officers to do so. The fact that three other judges found it to be sufficient is enough basis to say that the police reasonably relied on this warrant as being valid. It was not a bare bones affidavit, as my opponent wanted to determine. Bare bones is applied when it's merely speculation where there's no specific factual connection between the crimes and the location. As I just discussed, there's three facts here. Now it is the state's burden to prove this. However, in anticipation that correctly, that we would invoke this as an alternative argument, defendant only disputed whether the police would reasonably rely on it. Given these three facts connecting these sales to 701 West Marion, and under Leon, it cannot be clearer that because judges have looked at the same document and found it sufficient, the police were appropriate to do so. It's noteworthy my opponent in her reply brief did not acknowledge the citation to Leon directly and dispute why, under this clear U.S. Supreme Court precedent, the good faith exception should not apply. And so if there are no further questions, we would ask this court to affirm the judgment of the appellate court, either given the validity of the search warrant or under the good faith exception. Thank you. Thank you. Reply. To first just reply to the state's last argument there about Leon. I think if you look at that particular section, it's at the end of the decision. The Leon court did not just rely on the number of votes. The Leon court very clearly stated that it was the totality of the circumstances that they were reviewing. And that included that the defendant, out of the many suspects listed in that warrant, was the only one who challenged probable cause. And that it was not a bare bones warrant. Leon is what's considered a marginal case. And in that case, there was more information connecting that defendant to the criminal activity than there was here. In that case, you had an extensive investigation about drug dealing. You had suspects who were connected to the defendant because he was listed as the employer, one of those suspects on his probation records. You had an informant stating that they got drugs from a home in Burbank and that's where the defendant lived. We don't even have anywhere near that information here. And so that is, I think, a misreading of Leon. Counsel, Leon states that quote, suppression therefore remains an appropriate remedy if the magistrate or judge in issuing a warrant was misled by information in an affidavit. Right. That the affiant knew was false or would have known was false except for his reckless disregard of the truth. Are you asserting in any sense that that happened here? We're not asserting purposeful knowing or reckless misleading. In fact, it doesn't really matter whether it was inadvertent or purposeful here. What we're arguing is that it was bare bones. Now it's a specific kind of bare bones. It's the kind of bare bones affidavit that was at issue in Rojas because you're bootstrapping probable cause. Certainly when you have a series of hunches and you're trying to connect people to other people to places, you might have a desire to want to connect them. But when you have just a series of hunches and you're drawing inferences based on other inferences and conclusions, that's not fair probability. Certainly it's not as high as reasonable doubt, but I wouldn't call probable cause a low standard. It's higher than reasonable suspicion and we don't even have that here. And so to your question, it doesn't have to be purposeful. I'd like to say the state's argument as to the four factors seem to be moving a probable cause determination towards bright line rules and clearly this court reviews the totality of the circumstances. Those four factors can be relevant but if you have a case like here where you don't have those four factors, that's our position, then it's not going to be as helpful and so there's no reason to adopt another rigid rule which was rejected by the Supreme Court. And the state's argument that a drug dealer keeps evidence and packaging in his home, it relied on a case that dealt with a drug trafficker and then the reasoning in that case said that when you have large amounts of drugs you can reasonably infer under those circumstances that it would be kept at the drug trafficker's home. It's certainly far more than what we have here. To the point that not everyone has a stable residence. And I think that's the problem with this affidavit. We know that Casillas lives somewhere. We don't know where he lives. I don't think it's fair to assume that he doesn't have a stable residence. And what the state is referring to is after-the-fact information that is irrelevant to this court's determination of probable cause. There's a lot that came out at trial. Casillas took responsibility for the drugs and said he actually didn't access those drugs to deal but that's not relevant to this court's probable cause determination. We're looking at the warrant. May I ask, in a motion to suppress your warrant here and suppress evidence, what is the burden? At the motion to suppress? The defendant, I believe. Yes. And so the information in the warrant is also relevant to the state's argument about the distances. Yes, the addresses were in the warrant, but we don't know the distances. Those weren't before the magistrate. I lived in Joliet for several years, not far from where this occurred. Looking at the addresses, I would have no idea how far these doors were from one another. And even if the magistrate had those distances, it wouldn't matter for the reason we stated. Proximity has meaning when you know why the suspect is at the home. Here, we do not know that. You have to infer that. And then you would have to base the significance of the proximity on an inference, and that's improper. You have to base that on facts and observations. And the home being a candidate for a search is a hunch. That's exactly what that is. It's a candidate for a search. It doesn't mean a fair probability. The same is for the relationship between Casillas and Hernandez. My opponent used the word some relationship. That is the problem. We don't know the relationship. All we can infer is that they know one another. And that doesn't present grounds for a fair probability that the drugs will be there. As far as the associate's paragraph goes, the state may not be relying on it, but it is a part of the totality of the circumstances. It is, at best, the affiant's attempt to tie this drug dealing to that home. Casillas knows this person. And he was seen in her car once. That is not a statement to connect to the house. That's a reasonable inference. But it's not the ultimate statement of probable cause. You certainly see statements like that in other warrants. You see the affiant trying to connect everything. There's so little to connect that that's the ultimate conclusion here. Counsel, is there any general question of guidance we're going to be answering here? Or is this merely looking at the specific facts of a particular case involving a warrant? Well, I think this goes to the state's response about distinguishing this case from the hypothetical that I gave. I think the danger of the precedent of this case is that this case can be used to state there's probable cause in that circumstance. I mean, even if I let my niece's friend drive because her parents said go ahead, she has her driver's permit, go ahead and let her drive, that wouldn't create any more probable cause to search my home. I think it's dangerous because it sets a standard below reasonable suspicion to get into a third party's home. And I do think that's a very important factor. Also that the cases that the state cited as third party's homes had more information. Certainly more information tying. There's no case that's been cited with such little information where probable cause has been upheld. And finally, as to the standard of review, we didn't mention it because it was clear in the briefs that we argued that under either standard this is a bare bones warrant. We did not advocate for de novo review, but we cited this court's precedents. The state admits that this court cited de novo review in Sutherland, McCarty, more recently in Chambers. Even if it's a general standard of review, why would it be cited if it's not what's being applied? It is also true that deference is mentioned in the analysis of probable cause. That has been applied as one of the legal principles of probable cause. Now arguably, there's a contradiction between these two principles, but that's this court's precedents. And to the extent that there's a contradiction, it certainly makes sense for this to be de novo review because this is a legal determination. Otherwise, what the state is advocating for, this pure deference would result in upholding magistrate's legal determinations. Now there's a policy stated in Gates for that because we want police officers, we want to incentivize them to get warrants. But the First Amendment has balanced interests. We have to also protect against unreasonable searches and seizures. If we rely on magistrate hearings to create the unified body of law to guide other magistrates in determining probable cause, you're relying on a hearing that's ex parte, non-adversarial, frequently marked by Hays was how it was described in Chambers. And that would dissipate the unified body of law and would militate against this court's role as a reviewing court in creating that unified body. So if there are no further questions, Your Honor, we ask that this court find that there was no probable cause in the warrant and not apply the good faith exception. Thank you. Thank you. Case number 122761, People v. Monzo will be taken under advisement as agenda number 7. Ms. Rosario Moore, Ms. Bendick, we thank you for your arguments today. You're excused with our thanks.